IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIE RAY BEASLEY,

                Petitioner,

     vs.

S. R. MOORE,[1] Warden (A), *et al.*,

                Respondents.

No. 2:03-cv-02566-JKS

MEMORANDUM DECISION

Petitioner Willie Ray Beasley, a state prisoner proceeding *pro se*, has filed this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Beasley is currently in the custody of the California Department of Corrections and Rehabilitation incarcerated at the Deuel Vocational Institution.

I.  BACKGROUND/PRIOR PROCEEDINGS

On April 20, 1980, Beasley was convicted after a jury trial in the San Francisco Superior Court of violating California Penal Code § 187 [first-degree murder], § 245(a) [assault with a deadly weapon], § 220 [assault with intent to commit mayhem], and § 12021 (possession of a firearm by an ex-felon].  He was sentenced to a term of twenty-five years to life for the murder; the five-year sentence on the remaining counts to run concurrent.  He also received a two-year enhancement for use of a firearm, resulting in an aggregated term of twenty-seven years to life.

In August 2001 Beasley appeared before the Board of Prison Terms (Board) for his fourth parole consideration hearing.  The Board found him not suitable for parole and deferred his next hearing for one year.  On December 9, 2001, Beasley filed an administrative appeal, which was denied October 8, 2002.  In February 2003,  Beasley filed a petition for habeas relief in the California Superior Court, San Francisco County, which was denied on March 24, 2003, as

---

[1] S. R. Moore, Warden (A), Deuel Vocational Institution, is substituted for Claude E. Finn, Warden, Deuel Vocational Institution.  Fed. R. Civ. P. 17(d).

procedurally deficient.[2]  He then filed another petition in the San Francisco County Superior Court, which was denied in a written decision on the merits on July 16, 2003.  Beasley filed a petition for habeas relief in the California Court of Appeal on September 5, 2003, which was summarily denied without opinion or citation to authority on September 11, 2003.  Beasley's petition for review was filed in the California Supreme Court on September 22, 2003 and summarily denied without opinion or citation to authority on November 12, 2003.  Beasley timely filed his petition for habeas relief in this Court on December 23, 2003.

After this Court granted Beasley's request to stay this matter until he exhausted his state court remedies with respect to his claim that the Board's denial of parole violated the Eighth Amendment, Beasley filed a request in the California Supreme Court to exhaust his state court remedies with respect to that claim.  On July 13, 2005, the California Supreme Court summarily denied Beasley's petition with citation to *In re Dannenberg*, 34 Cal. 4th 1061 (2005); *In re Clark*, 5 Cal. 4th 750 (1993); and *In re Miller*, 17, Cal. 2d 734 (1941).  Beasley then filed his Second Amended Petition in this Court on September 22, 2005 (file stamped September 26, 2005).

## II.  GROUNDS PRESENTED/DEFENSES

In his Second Amended Petition Beasley raises four grounds:  (1) the Board violated due process by relying on the crime and his social history, the so-called immutable factors; (2) the Board violated due process when it failed to comply with California Penal Code § 3041; (3) the Board's decision finding him unsuitable for parole violated his due process rights because the decision lacked evidentiary support; and (4) denying him parole and retaining him in prison beyond the Board's estimated maximum release date violates the Eighth Amendment.  Respondent concedes that Beasley has exhausted his state court remedies.

## III.  STANDARD OF REVIEW

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28

---

[2] Beasley had filed an earlier petition for habeas relief in the San Francisco Superior Court while his administrative appeal was still pending that was denied on procedural grounds before the Board had rendered a decision on Beasley's administrative appeal.

U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision.[4] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[5]  When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be "objectively unreasonable, "not just incorrect."[6]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[7] Finally, in a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[8]

In applying this standard, this Court reviews the last reasoned decision by the state court,[9] which in this case was that of the San Francisco County Superior Court, except as to the fourth

---

[3]  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[4]  *Williams v. Taylor*, 529 U.S. at 412.

[5]  *Carey v. Musladin*, 549 U.S. 70, ___, 127 S.Ct. 649, 654 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. ___, ___, 128 S.Ct. 743, 746-47 (2008) (per curiam).

[6]  *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[7]  *Schriro v. Landrigan*, 550 U.S. ___, ___, 127 S.Ct. 1933, 1939 (2007).

[8]  *Fry v. Pliler*, 551 U.S. ___, ___, 127 S.Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[9]  *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

ground.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[10]

AEDPA's deferential standard of review under 28 U.S.C. § 2254(d) is inapplicable, however, where there was no reasoned state court decision.  The Board of Parole Hearings Office of Policy and Appeals is an administrative body not entitled to deference under AEDPA.[11]  This Court must review the last state court decision that adjudicated a petitioner's claims on the merits.  Here, with respect to Beasley's fourth ground, that is the decision of the California Supreme Court, which did not provide any reasoning to support its denial of relief.  Therefore, this Court must  "independently review the record to determine whether the state court clearly erred in its application of Supreme Court law,"[12] "through the 'objectively reasonable' lens ground by *Williams*."[13]  When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[14]

To the extent that Petitioner raises issues of the proper application of State law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[15]  A federal court must accept that state courts correctly applied state laws.[16]  A petitioner may not transform a state law issue into a federal one by simply asserting a violation of due

---

[10] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[11] *See Rosas v. Nielsen,* 428 F.3d 1229, 1231-32 (9th Cir. 2005).

[12] *Pirtle v. Morgan,* 313 F.3d 1160, 1167 (9th Cir. 2002).

[13] *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir. 2000) (construing *Williams,* 529 U.S. at 400).

[14] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[15] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[16] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

process.[17]  Nor may a federal court issue a habeas writ based upon a perceived error of state law

unless the error is sufficiently egregious to amount to a denial of due process under the

Fourteenth Amendment.[18]

IV.  DISCUSSION

Ground 1 (Reliance on Immutable Factors); Ground 2 (Failure to Comply with California
Penal Code § 3041); and Ground 3 (Lack of Evidentiary Support).

Because they are inextricably intertwined, consolidating discussion of his first, second

and third grounds is appropriate.

*Sass v. California Board of Prison Terms*,[19] settled the issue that a California prisoner has

a liberty interest in parole protected by the procedural safeguards of the Due Process Clause of

the Fourteenth Amendment.[20]   It is equally as well settled that a decision of the parole board to

deny a prisoner parole must be supported by some evidence in the record.[21]  Beasley challenges

the refusal of the Board to grant him a parole on the basis that the decision was based primarily,

if not wholly, upon the nature of his commitment offense.[22]   In *Biggs v. Terhune*,[23] the Ninth

Circuit indicated that although the commitment offense provides some evidence of unsuitability

---

[17] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[18] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[19] 461 F.3d 1123, 1128 (9th Cir. 2006).

[20] Respondent candidly acknowledges that his contrary position is foreclosed by controlling authority and only raises it in order to preserve the issue for appeal.

[21] *Sass*, 461 F.3d at 1128–29 (citing *Superintendent v. Hill*, 472 U.S. 445, 457 (1985)).

[22] Under California law, "[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole."  *In re Rosenkrantz*, 29 Cal.4th 616, 682 (2002).  The Board must, however, "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released. *In re Dannenberg,* 34 Cal.4th 1061, 1071, 1095 (Cal. 2005).  "Factors beyond the minimum elements of the crime include, (1) the commitment offense, where the offense was committed in 'an especially heinous, atrocious or cruel manner'; (2) the prisoner's previous record of violence; (3) 'a history of unstable or tumultuous relationships with others'; (4) commission of 'sadistic sexual offenses'; (5) 'a lengthy history of severe mental problems related to the offense'; and (6) 'serious misconduct in prison or jail.'"  *Irons v. Carey*, 505 F.3d 846, 851 n.4 (citing Cal. Code. Regs., tit. 15 § 2402(c)).

[23] 334 F.3d 910, 916–17 (9th Cir. 2003).

for parole, "[a] continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the system and could result in a due process violation."  It is this principle that Beasley has drawn into issue in this case.

There is, as this Court has noted in other cases, a lack of clear guidance from the Court of Appeals on this issue.  Where the line of demarcation that triggers a violation of the Due Process Clause referred to in *Biggs* lies is unknown.  *Irons v. Carey*,[24] appears to make it dependent, at least in significant part, upon the gravity of the commitment offense, how heinous it was, *e.g.*, the extent to which the prisoner acted in callous disregard for human life, the degree of depravity or cruelty shown, and the nature of the victim.  The holding in *Irons* established a bright-line test of sorts, *i.e.*, a crime that is more heinous, atrocious, callous, or cruel than that committed by Sass,[25] is sufficient to satisfy due process, despite evidence of exemplary behavior in prison and evidence of rehabilitation and the lack of a prior criminal record.[26]  *Irons* did not, however, address the question posed by *Biggs*—at what point in time does the nature of the commitment offense becomes so attenuated that it no longer constitutes "some evidence"?[27]

From *Biggs*, *Sass*, and *Irons*, a district court can glean certain guiding principles in ruling on a California prisoner's application for a writ of habeas corpus addressed to the denial of

---

[24] 505 F.3d 846, 853–54 (9th Cir. 2007).

[25] Sass was convicted of second degree murder, gross vehicular manslaughter, hit and run death, causing injury while driving under the influence, and felony drunk driving, arising out of an automobile accident in which a death occurred.  He was sentenced to 15 years to life with the possibility of parole.  Prior to his conviction of second degree murder, Sass had been convicted on seven separate occasions for DUI.

Irons was convicted of second degree murder and sentenced to 17 years to life in prison with the possibility of parole.  After an angry confrontation with the victim, Irons went to his room, retrieved his gun, and then went to the victim's room where he fired 12 rounds into the victim and, after the victim complained that he was in pain, stabbed him twice in the back.  He then wrapped the victim's body in a sleeping bag and left it in the room for the ten days it took him to procure a car.  Irons then took the body to the coast, weighed it down, and disposed of it in the ocean.  Prior to his conviction, Irons had no criminal record.

[26] 505 F.3d 853–54.

[27] In *Irons*, as well as *Sass* and *Biggs*, the determination denying parole was made prior to the time that the petitioner had served the minimum term to which he was sentenced.

parole.  First, a California prisoner has a liberty interest in parole protected by the Due Process Clause.  Second, the test to be applied is whether some evidence indicates a parolee's release unreasonably endangers public safety, not whether the findings of the Board  are supported by evidence.  Third, at least until such time as the prisoner has served the minimum sentence imposed, denial of a parole date solely upon the basis of the commitment offense more likely than not does not violate the Due Process Clause.  Fourth, a district court must examine the record for sufficient evidence to support the findings of the Board that release unreasonably endangers public safety.  Fifth, the extent to which the gravity of the commitment conviction is attenuated by time, assuming that all other factors properly considered are either neutral or positive, is dependent upon (1) the nature of the commitment offense and (2) whether there has been a significant time lapse since the offense was committed.

In this case, the crime occurred more than 20 years before the hearing; however, like Biggs, Sass, and Irons, Beasley had not yet completed his minimum term.  Beasley, who was convicted of first degree murder, illegally entered his ex-wife's apartment and waited in hiding for her return.  He first shot her boyfriend in the chest, killing him, then shot his ex-wife in the face, and shot her again in the back as she ran away.  This crime, found by a jury to constitute first degree murder, is certainly more heinous and atrocious than the second degree murder convictions found sufficient in *Sass* and *Irons* to constitute a sufficient basis for the Board's decision.  As was the panel in *Irons*, this Court is bound by *Sass* and must find that Beasley's due process rights were not violated.

Beasley's argument that the decision of the Board lacks evidentiary support lacks merit.  Beasley focuses on a single factor, the nature of his crime, as being the basis for denial of parole; however, as the decision of the San Francisco County Superior Court found, the Board tailored its decision to the totality of Beasley's individual circumstances.  While continued reliance on the unchanging circumstances of Beasley's offense, standing alone, may have implicated his liberty interest in parole,[28] that did not happen in the course of the Board's 2001 parole denial.

---

[28] *Biggs*, 343 F.3d  at 916,

In addition to the specific offense of which he was convicted, which is not in dispute, the Superior Court found that the Board considered: Beasley's criminal history, unstable social history, law enforcement's opposition to his release, and suggested that Petitioner present a better plan for his release.[29]  Under  *McQuillion v. Duncan,*[30] these unquestionably constitute "'some evidence' having 'some indicia of reliability.'"

In light of *Hill*, *Irons*, *Sass,* and *McQuillion*, this Court cannot say that the decision of the San Francisco County Superior Court, which applied the same "some evidence" test applied in *Hill*, was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[31]  Nor can this Court find that the Superior Court unreasonably applied the correct legal principle to the facts of the Beasley's case, *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.[32]

To the extent that Beasley argues that the failure to set a parole date is contrary to the provisions of California Penal Code § 3041, that argument, involving the proper interpretation and application of a state statute, is an issue beyond the purview of this Court in a federal habeas proceeding.  The question to be decided by a federal court on a petition for habeas corpus is not whether the Board committed state-law error in relying upon the commitment offense.  Rather, the federal, constitutional question is whether such reliance is so arbitrary or capricious as to constitute an independent due process violation under the Fourteenth Amendment.[33]  Even if the

---

[29] Findings that this Court must accept unless shown to be incorrect by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell, supra*.  A burden Beasley has failed to carry.

[30] 306 F.3d 895, 904 (9th Cir.2002) (applying standard outlined by the Supreme Court in *Superintendent v. Hill,* 472 U.S. 445, 455 (1985)).

[31] 28 U.S.C. § 2254(d).

[32] *Lockyer–Williams–Schriro*.

[33] *See Richmond v. Lewis*, 506 U.S. 40, 50 (1991).

California Superior Court erred in applying California, which it did not,[34] that error was not so
arbitrary and capricious as to constitute a violation of due process.

Beasley is not entitled to relief on his first, second and third grounds.

Ground 4:  Eighth Amendment.

As there was no reasoned state court decision addressing this ground, this Court must
decide the issue *de novo* on the record before it.  While the Eighth Amendment prohibits
sentences that are grossly disproportionate to the crime, "outside the context of capital
punishment, successful challenges to the proportionality of particular sentences will be
exceedingly rare."[35]  The Ninth Circuit has held that "'only extreme sentences that are grossly
disproportionate to the crime' violate the Eighth Amendment."[36]  In *Nunes v. Ramirez-Palmer*,[37]
the Ninth Circuit stated:

> [T]he Supreme Court has noted that proportionality analysis under the Eighth
> Amendment should be guided by objective criteria, including: "(i) the gravity of
> the offense and the harshness of the penalty; (ii) the sentences imposed on other
> criminals in the same jurisdiction; and (iii) the sentences imposed for commission
> of the same crime in other jurisdictions." *Solem v. Helm,* 463 U.S. 277, 292, 103
> S.Ct. 3001, 77 L.Ed.2d 637 (1983).  Despite this, the Supreme Court has not
> uniformly applied this three step analysis.  *See, e.g., Harmelin v. Michigan,* 501
> U.S. 957, 1005, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *Rummel v. Estelle,* 445
> U.S. 263, 285, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).
>
> In an attempt to resolve this inconsistency, the Supreme Court has
> explicitly identified that which constitutes "clearly established federal law" in its
> Eighth Amendment jurisprudence for the purpose of habeas review.  Specifically,
> in *Lockyer v. Andrade,* 538 U.S. 63, 72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003),
> after conceding that its "precedents in this area have not been a model of clarity,"
> the Court held that "one governing legal principle emerges as 'clearly established'
> under § 2254(d)(1):  A gross disproportionality principle is applicable to sentences

---

[34] Under California law, a proportionality analysis is not required until after a prisoner is found
suitable for parole.  *In re Dannenberg*, 34 Cal.4th 1061, 1097–98 (2005); *In re Stanworth*, 33 Cal.3d 176,
183 (1982); Cal. Code Reg., tit. 15, § 2280.

[35] *Solem v. Helm,* 463 U.S. 277, 289-90 (1983) (internal alternations and emphasis omitted).

[36] *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir.1994) (quoting *United States v. Bland,*
961 F.2d 123, 129 (9th Cir. 1992).

[37] 485 F.3d 432, 438–39 (9th Cir.), *cert. denied*, 128 S.Ct. 404 (2007).

for terms of years." *Lockyer,* 538 U.S. at 72, 123 S.Ct. 1166.  In so holding, the Court made no mention of any constitutional imperative requiring that courts make the various intra- and inter-jurisdictional comparisons recommended by the *Solem* court.  *See id.*  Instead, the Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* at 73, 123 S.Ct. 1166.

Beasley (1) was lying in wait providing him time for reconsideration and (2) there were two victims.  Thus, this case does not present an "exceedingly rare" and "extreme" case where the failure of the Board to find Beasley suitable for parole, thereby continuing his term of imprisonment, runs afoul of Eighth Amendment law as established by the Supreme Court of the United States.[38]  Beasley is not entitled to relief under his fourth ground.

## V.  CONCLUSION AND ORDER

Beasley is not entitled to relief under any ground raised in his petition.  Accordingly,

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** no Certificate of Appealability is required.[39]

The Clerk of the Court to enter final judgment accordingly.

Dated:  September 30, 2008

s/ James K. Singleton, Jr.

JAMES K. SINGLETON, JR.
United States District Judge

---

[38] *Lockyer*, 538 U.S. at 72–77.

[39] *Rosas v. Nielsen*, 428 F.3d 1229, 1231–32 (9th Cir. 2005).

APPENDIX

Petitioner first became eligible for parole in 1995, but was found unsuitable. In 1997 and 1999, Petitioner was again considered and rejected for parole.

In August 2001, the Board of Prison Terms found Petitioner unsuitable for parole, and an unreasonable threat to public safety.  The Board based the decision on its findings that: 1) he poses an unreasonable risk of danger to society or a threat to public safety; 2) the crime was carried out in an especially cruel and callous manner demonstrating disregard for human suffering; 3) the motive was inexplicable or very trivial; 4) he has a record of violence or assaultive behavior and an escalating pattern of criminal conduct; 5) he had a history of unstable and tumultuous relationships with others; and 6) he has failed to profit from society's previous attempts to correct his criminality.  The Board also requested more information regarding Defendant's post-parole plans and attempts to find employment.

Petitioner contends that 1) the BPT's decision finding him unsuitable for parole is not supported by the record; 2) the BPT's refusal to set parole release dates violates the mandate of PC § 3041; and 3) the BPT has imposed excessive punishment on Petitioner by failing to fix his primary term of imprisonment.

"[T]he factual basis for a Board [of Prison Terms] decision granting or denying parole is subject to a limited judicial review under the 'some evidence' standard of review."  In re Rosenkrantz (2002) 29 Cal.4th 616, 652.  "Judicial oversight must be extensive enough to protect the limited right of parole applicants 'to be free from an arbitrary parole decision . . . and . . . something more than mere pro forma consideration.'  The courts may properly determine whether the Board's handling of parole applications is consistent with the parole policies established by the Legislature.  While courts must give great weight to the Board's interpretation of the parole statutes and regulations, final responsibility for interpreting the law rests with the courts.  Courts must not second-guess the Board's evidentiary findings.  However, it is the proper function of judicial review to ensure that the Board has honored in a 'practical sense' the applicant's right to 'due consideration.'  This function is best served by examining the Board's parole suitability rulings under a deferential abuse of discretion standard.  The Board's decision should not be disturbed unless it has acted arbitrarily or capriciously.  Particular deference must be accorded to the Board's factual determinations, which need only be supported by some evidence."  In re Ramirez (2001) 94 Cal.App.4th 549, 564 [citations omitted].

The Board's regulations for setting parole release dates are found in title 15 of the California Code of Regulations.  Section 2401 provides: " 'A life prisoner shall be considered for parole for the first time at the initial parole consideration hearing . . . .  A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c).  A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d).  A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public.  'In setting the parole date the panel shall consider the Sentencing Rules for the Superior Courts. The panel shall also consider the criteria and guidelines set forth in this article for determining the suitability for parole and the setting of

parole dates, considering the number of victims of the crime for which the prisoner was sentenced and any other circumstances in mitigation or aggravation.' " In re Ramirez, supra, 94 Cal.App.4th at p. 565.

Subdivision (a) of section 2402 of title 15 of the Code of Regulations provides in part that "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Subdivision (b) provides that "[a]ll relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct . . .; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability."

Subdivision (c) of section 2402 of title 15 of the Code of Regulations sets forth circumstances tending to indicate unsuitability for parole. Those circumstances include:

"(1)  Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.  (C) The victim was abused, defiled or mutilated during or after the offense.  (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.  (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2)  Previous record of violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim . . . .

(3) Unstable Social history. The prisoner has a history of unstable or tumultuous relationships with others . . . ."

In subdivision (d) of section 2402 of title 15 of the Code of Regulations, circumstances tending to show suitability for parole are delineated.  Those include:

"(1)  No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2)  Stable social history.  The prisoner has experienced reasonably stable relationships with others.

(3)  Signs of remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as . . . indicating that he understands the nature and magnitude of the offense.

MEMORANDUM DECISION – APPENDIX
*Beasley v Moore*, 2:03-cv-02566-JKS                   Page 2 of  5

(4)  Motivation for Crime.  The prisoner committed his crime as the result of significant stress in his life, especially if the stress had built over a long period of time . . .

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7)  Age.  The prisoner's present age reduces the probability of recidivism.

(8)  Understanding and Plans for the future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9)  Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release."

As explained in In re Ramirez, "the gravity of the commitment offense or offenses alone may be a sufficient basis for denying a parole application, so long as the Board does not fail to consider all other relevant factors.  Nevertheless, the circumstances of any past offense, even any murder, are not necessarily a sufficient ground for the Board to refuse to set a parole release date.  All violent crime demonstrates the perpetrator's potential for posing a grave risk to public safety, yet parole is mandatory for violent felons serving determinate sentences.  And the Legislature has clearly expressed its intent that when murderers--who are the great majority of inmates serving indeterminate sentences--approach their minimum eligible parole date, the Board 'shall normally set a parole release date.'  Penal Code § 3041(a).  The Board's authority to make an exception based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is 'normally' to be granted . . . .  Therefore, a life term offense or any other offenses underlying an indeterminate sentence must be particularly egregious to justify the denial of a parole date."  In re Ramirez, supra, 94 Cal.App.4th at pp. 569-570 [citations omitted].

The Ramirez court continued:  "In order to comply with the parole policy established by the Legislature in Penal Code section 3041, the Board must weigh the inmate's criminal conduct not against ordinary social norms, but against other instances of the same crime or crimes . . . .  The Board must also consider the length of time the inmate has served in relation to the terms prescribed by the Legislature for the offenses under consideration, in order to arrive at a 'uniform' term as contemplated by Penal Code section 3041, subdivision (a)."  In re Ramirez, supra, 94 Cal.App.4th at p. 570.

Petitioner contends that in denying him parole, the BPT relied exclusively on the circumstances of his offense, which will never change, and the decision finding him unsuitable is not supported by the record.  Though Petitioner appears to have an exemplary record as a prisoner, the BPT does not appear to abuse its discretion.

The BPT did weigh the commitment offense heavily in making its determination.  Petitioner illegally entered his ex-wife's apartment and waited in hiding for her return.  He then shot her boyfriend in the chest, killing him, and shot his ex-wife in the face.  He shot her again in the back as she ran away.  However, the BPT also relied on Petitioner's prior record, both as a juvenile and as an adult, and his failure to correct his criminal conduct.  Petitioner was first arrested as a juvenile in 1960 for robbery.  In 1966, Petitioner was arrested on four counts of a traffic violation as a juvenile, and wardship was declared. The following year, while on proba-

tion, he was arrested for car stripping and committed to a County Boys Ranch. In 1969, Petitioner was arrested for petty theft and put on probation, and was then arrested for robbery and assault with a deadly weapon and receiving stolen goods later that year. After CDC evaluation, Petitioner was sentenced to eight months in County Jail and then placed on probation. Based on that information, the BTP found that Petitioner had on previous occasions inflicted or attempted to inflict serious harm on a victim and had exhibited an escalating pattern of criminal conduct.

Petitioner was further found to have a history of unstable and tumultuous relationships with others. Though in his psychological evaluations Petitioner was found to have a violence potential below average to the male prison population, the psychologist also noted that if Petitioner were to return to a pattern of dysfunctional social relationships, the potential for violence could increase. The BPT also noted the strong opposition of the San Francisco District Attorney, and suggested that Petitioner present a better plan for his release. Petitioner's contention that the BPT may only consider the gravity of his offense at the initial parole hearing is without support or merit. Penal Code § 3041(a) sets out a structure detailing the dates for a prisoner's initial hearing and the criteria to be used by the Board. Subsection (b) merely mandates that a release date must be set unless the Board determines that gravity of the offense, or the timing and gravity of current or past convictions, is such that public safety requires a lengthier period of incarceration, and a parole date cannot be fixed at that time. Penal Code § 3041.5 provides for annual review except in certain circumstances. Petitioner basically repeats his first contention that the BPT's determination that he poses an unreasonable threat to public safety is unfounded.

Lastly, Petitioner contends that under In re Rodriguez (1975) 14 Cal.3d 639, indeterminately sentenced inmates have an  right to have their terms of imprisonment fixed at a number of years proportionate to their sentence. Rodriguez was decided at a time prior to the Determinate Sentencing Law, and its holding is limited. Furthermore, the California Supreme Court has recently granted review in In re Danneberg, previously published at 102 Cal.App.4th 95, to answer whether "[a]t a parole suitability hearing that is held pursuant to Penal Code section 3041, must the Board of Prison Terms generally engage in a comparative proportionality analysis with respect to offenses of similar gravity and magnitude and consider base term matrices used by the Board in setting release dates and deny a parole date solely on the basis of the circumstances of the offense only when the offense is particularly egregious, or may the Board first determine whether the inmate is suitable for parole because he or she is no longer a threat to public safety and engage in a proportionality analysis only if it finds the inmate suitable for parole?" 130 Cal.Rptr.2d 653. Further consideration of this question is not appropriate at this time.

Petitioner further argues that because he has served 23 years in prison and has accumulated eight years of credits, when a total period of imprisonment is set, he may have exceeded that period already. Petitioner further contends that under his version of the facts, his total base term should fall between 27 and 29 years, in which case he should have been released already. Application of the matrix, however, is not appropriate until Petitioner has been found suitable for parole. In this case, he has not.

For the foregoing reasons, Petitioner's petition for writ of habeas corpus is DENIED.